IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SEAN CHEN<br>3851 Boardwalk, Unit 2706<br>Atlantic City, NJ 08401 | :<br>:<br>: | CIVIL ACTION |
| Plaintiff, | :<br>: | No.: _____ |
| v. | :<br>: | |
| AC OCEANWALK, LLC<br>d/b/a OCEAN RESORT<br>500 Boardwalk<br>Atlantic City, NJ 08401 | :<br>:<br>:<br>: | **JURY TRIAL DEMANDED** |
| Defendant. | :<br>: | |

## CIVIL ACTION COMPLAINT

Sean Chen (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

### INTRODUCTION

1. Plaintiff has initiated this action to redress violations by AC Oceanwalk, LLC d/b/a Ocean Resort (hereinafter referred to as "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 200d *et seq.*), the New Jersey Law Against Discrimination ("NJLAD"), and the New Jersey Wage Payment Law ("NJWPL"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

### JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws. This Court has supplemental jurisdiction over Plaintiff's

state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

3. This Court may properly assert personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny.

4. Pursuant to 28 U.S.C. § 1392(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5. Plaintiff is proceeding herein after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## **PARTIES**

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a hotel and casino providing dining, entertainment, and nightlife to customers in New Jersey. They have offices located at the above-captioned address.

9. At all times relevant herein, Defendant acted through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is an Asian (Chinese) individual.

12. On or about April 11, 2022, Plaintiff attended a job fair at Defendant's Atlantic City Casino location.

13. As Plaintiff holds a Master's Degree in Information Science, and has worked as an IT professional for over 25 years, Plaintiff inquired about an IT position with Defendant; however, Defendant had no IT recruiters in attendance at Defendant's job fair.

14. Instead, Defendant's Executive Chef, Les Bender (Caucasian/American – hereinafter "Bender") inquired as to whether Plaintiff "knew how to chop vegetables," to which Plaintiff responded in the affirmative.

15. In response thereto, Bender hired Plaintiff and placed him in Defendant's sole Chinese restaurant, Zhen Bang, despite Respondent having over two (2) dozen restaurants on the premises.

16. In hiring Plaintiff, Bender assured Plaintiff that he would put Plaintiff in contact with Defendant's IT department and that Plaintiff would likely be transferred once he "had his foot in the casino door."

17. Accordingly, on or about April 14, 2022, Plaintiff commenced his employment with the Defendant as a kitchen helper in Defendant's Zhen Bang restaurant.

18. At all times relevant herein, Plaintiff was supervised directly and indirectly by Food and Beverage Director, Rebecca Shultz (Caucasian/American – hereinafter "Shultz") and Bender.

19. After speaking with Schultz regarding his IT background, Schultz stated how impressed she was by the same and would contact him about an IT position with Defendant.

20. Curiously, however, Schultz never contacted Plaintiff regarding an IT position with Defendant.

21. Instead, Plaintiff worked in the Zhen Bang restaurant for one (1) week until he was transferred to the employee cafeteria due to alleged "lack of experience."

22. Shortly after Plaintiff's transfer to the employee cafeteria, Defendant subjected Plaintiff to a hostile work environment and commenced a campaign of discrimination against Plaintiff.

23. By way of example, several of Defendant's non-Asian employees referred to Plaintiff solely by "Chinaman" and "hey, China."

24. Plaintiff informed said non-Asian employees that his legal name was Sean, to which they replied, "how did you get a name like Sean, when you are Chinese."

25. As further evidence of discrimination and a hostile work environment, Defendant's employees also talked down to and treated Plaintiff in a derogatory manner.

26. On or about April 26, 2022, after working hard continuously cutting ribs for two (2) hours, Plaintiff commenced a short break, as other non-Asian employees were regularly permitted to do.

27. Upon returning from his short break, Plaintiff's non-Asian co-worker discriminatorily yelled, "hey Chinaman, you can't take a break without letting anyone know, and you have to put your food away before you take a break."

28. Plaintiff immediately objected to the racially derogatory name calling and informed his non-Asian coworkers he was never trained or informed about Defendant's break procedures.

29. Bender, who witnessed the aforementioned conversation and Plaintiff's objections to the same, approached Plaintiff and instructed him to draft a written complaint to report the racially derogatory and hostile remarks.

30. In accordance with Bender's instructions, Plaintiff made a written report regarding the aforesaid discriminatory remarks about his race and/or national origin.

31. On the same date Plaintiff made verbal and written complaints of racial slurs, hostility, and disparate treatment that his coworkers subjected him to, Defendant unjustifiably suspended Plaintiff's employment.

32. Just three (3) days following Plaintiff's complaints of hostility and discrimination and Defendant's unjustifiable suspension of his employment, on or about April 29, 2022, Defendant abruptly terminated his employment, allegedly for being "rude" and "discourteous."

33. However, these allegations are not true and Plaintiff's termination is completely pretextual because: (1) Plaintiff behaved in a professional manner; (2) Defendant suspended Plaintiff's employment on the same day he made verbal and written complaints of hostility and discrimination; and (3) Defendant terminated Plaintiff's employment just three (3) days following his reports of race discrimination and a hostile work environment caused by Defendant's management.

34. Moreover, Plaintiff earned approximately $13/hour and worked approximately forty (40) hours per week.

35. For the last three (3) days of Plaintiff's employment, in or about late-April 2022, Plaintiff did not receive paychecks for work performed – amounting to approximately $104.00 in unpaid wages.

## COUNT I
## Violation of Title VII of the Civil Rights Act of 1964 ("Title VII")
### ([1] Race Discrimination; [2] National Origin Discrimination; [3] Retaliation; and [4] Hostile Work Environment)

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. During Plaintiff's employment with Defendant, he was subjected to discrimination, retaliation, and a hostile work environment through disparate treatment as outlined *supra* because of his race and/or national origin.

38. For example, Defendant subjected Plaintiff to discriminatory comments regarding his race/national origin and continued with said discriminatory comments even after Plaintiff requested the same cease and desist.

39. Plaintiff objected to/complained of the aforementioned instances of race/national origin discrimination and disparate treatment, but his concerns were ignored and Plaintiff was instead placed on an unjustifiable suspension.

40. Plaintiff was then terminated for completely pretextual reasons on or about April 29, 2022 because: (1) Plaintiff behaved in a professional manner; (2) Defendant suspended Plaintiff's employment on the same day he made verbal and written complaints of hostility and discrimination; and (3) Defendant terminated Plaintiff's employment just three (3) days following his reports of race discrimination and a hostile work environment caused by Defendant's management.

41. Therefore, Plaintiff believes and avers that he was subjected to a hostile work environment and terminated because of his race and/or national origin and/or his objections to/complaints of race and national origin discrimination.

42. These actions as aforesaid constitute violations of Title VII.

## COUNT II
### Violation of the New Jersey Law Against Discrimination ("NJLAD")
**([1] Race Discrimination; [2] National Origin Discrimination; [3] Retaliation; and [4] Hostile Work Environment)**

43. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

44. Plaintiff reasserts each and every allegation in Count I of this Complaint as the same constitute unlawful violations under the NJLAD.

## COUNT III
### Violation of the New Jersey Wage Payment Law ("NJWPL")
**(Unpaid Wages)**

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Defendant failed to pay Plaintiff compensation earned, for approximately three (3) days of Plaintiff's wages, amounting to approximately $104.00.

47. These actions as aforesaid violate the NJWPL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive and liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish

Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation); and

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law.

  F. Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
Andrew R. Olcese, Esq.
Samantha Pankey Martin, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: April 28, 2023